1        IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF HAWAII

3

4    UNITED STATES OF AMERICA,        )  CR NO 19-00111 JAO
                                      )
5              Plaintiff,             )  Honolulu, Hawaii
                                      )
6        vs.                          )  October 25, 2019
                                      )
7    MICHELET LOUIS,                  )  CHANGE OF PLEA HEARING
                                      )
8              Defendant.             )
     ─────────────────────────────   )

9

10

11              TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JILL A. OTAKE
12          UNITED STATES DISTRICT COURT JUDGE

13   APPEARANCES:

14   For the United States    REBECCA ANN PERLMUTTER, ESQ.
     of America:              Office of the U.S. Attorney
15                            PJKK Federal Building, Room 6-100
                              300 Ala Moana Boulevard
16                            Honolulu, Hawaii 96850

17   For the Defendant:       HARLAN Y. KIMURA, ESQ.
                              Central Pacific Plaza
18                            220 South King Street, Suite 1660
                              Honolulu, Hawaii 96813

19

20

21

22   Official Court          ANN B. MATSUMOTO, RPR
     Reporter:               United States District Court
23                           300 Ala Moana Boulevard, C-338
                             Honolulu, Hawaii 96850

24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).

```
1   FRIDAY, OCTOBER 25, 2019                    11:30 O'CLOCK A.M.

2             COURTROOM MANAGER:  Criminal Number 19-00111-JAO,

3   United States of America versus Michelet Louis.

4             This case has been called for a change of plea

5   hearing.

6             Counsel, please make your appearances for the record.

7             MS. PERLMUTTER:  Good morning, Your Honor.  Rebecca

8   Perlmutter representing the United States.

9             THE COURT:  Good morning.

10            MR. KIMURA:  Yes, good morning, Your Honor.  Harlan

11  Kimura representing Mr. Michelet Louis, who's also present.

12            THE COURT:  Good morning.  Good morning, Mr. Louis.

13            THE DEFENDANT:  Good morning, Ms. Otake.  I'm now

14  ready for the -- sorry.  I'm just nervous.

15            THE COURT:  That's okay.  That's fine.  It's an

16  important day for you, so I understand that.

17            Everyone, you may be seated.

18            So, Mr. Louis, it's my understanding that you are

19  here today to plead guilty to one of the counts in the

20  indictment.  Is that your understanding?

21            THE DEFENDANT:  Yes.

22            THE COURT:  Okay.  So I am going to ask you a series

23  of questions.  If you have any questions about my questions,

24  interrupt me.  I'll give you an opportunity to talk to

25  Mr. Kimura.  If you're confused by anything, also interrupt me,
```

1   and I'll give you a chance to talk to Mr. Kimura.

2           This is what's called a plea colloquy, which means

3   I'm kind of reading off of a script, but I'm paying careful

4   attention to your answers and to what the two attorneys say as

5   well.

6           And with that, if we could swear in Mr. Louis,

7   please.

8           COURTROOM MANAGER:  If you could please stand, and if

9   you could please put your right palm forward.

10          (Defendant sworn.)

11          THE DEFENDANT:  I swear.

12          COURTROOM MANAGER:  Thank you.

13          THE COURT:  You may be seated.

14          So again, Mr. Louis, we are here to enter a plea --

15  or to have you enter a plea today -- that's my understanding --

16  a plea of guilty to one of the counts of the indictment.

17          I want to make sure that you are doing this because

18  this is what you want to do, that you're doing it knowingly and

19  voluntarily.  Is this plea of guilty what you want to do?

20          THE DEFENDANT:  Yes, Your -- yes.

21          Yes, it is.  Yes, it is.

22          THE COURT:  Have you had time to think about pleading

23  guilty and what that means for you in this case?

24          THE DEFENDANT:  I've been thinking about it very

25  deeply.  And I'm trying not to -- I'm not trying to go too far

1    into it.  You know, I'm not trying to be too right, too left.

2    You know, just right down the middle about what the outcome may

3    be.  And I'm trying to make sure it's like -- give me a sense

4    of ecstasy, you know, just happiness after everything gets

5    resolved.  And just being here today just kind of is trending

6    towards that day, you know?

7            THE COURT:  Okay.  So it sounds to me -- and you

8    correct me if I'm wrong -- that you have spent some time really

9    thinking about this, and you've had an opportunity to talk

10   about it with your attorney; is that right?

11           THE DEFENDANT:  Yes.  Since the last time I've been

12   here, I've been thinking about it very much so.

13           THE COURT:  Okay.  And so it's not a situation where

14   you're coming to court and you're caught off guard or anything

15   like that; you understand what you're doing today, right?

16           THE DEFENDANT:  Yes.

17           THE COURT:  Okay.  Now that you have been sworn in,

18   Mr. Louis, what that means is that if you answer any of my

19   questions falsely, your answers may later be used against you

20   in another prosecution for perjury or false statement.  Do you

21   understand that?

22           THE DEFENDANT:  Yes.

23           THE COURT:  If you plead guilty, do you understand

24   that you will also give up your right not to incriminate

25   yourself, since I will ask you questions about what you did in

1  order to satisfy myself that you are guilty, and you will have

2  to talk about what you did?  Do you understand that?

3          THE DEFENDANT:  Yes.  I won't lie to you.

4          THE COURT:  Okay.  You said a moment ago that -- you

5  mentioned the word "ecstasy" or something of that sort.  And I

6  want to make sure I understand what you're saying about that,

7  that -- what did you mean when you used that word?

8          THE DEFENDANT:  Just a sense of elation, you know?

9  Just thinking about it, just -- just thinking about the last

10  time I was happy, you know?  It probably was just when I was in

11  this courtroom, in this very seat.  I feel like it's getting to

12  a point I've been here very -- for a very long, long, long

13  time.  And it's not -- hasn't been short, but I'm trying to

14  give it the best as I -- the best that I can, you know?  I'm

15  sorry I'm nervous, you know, I'm just like trying to get the

16  words out, but --

17          THE COURT:  That's fine.

18          THE DEFENDANT:  -- right now, it's making me nervous.

19          THE COURT:  I just want to make sure that you're

20  doing this because this is what you want to do and not simply

21  because you just want to get this behind you.  Is that -- is

22  that true?  That you understand that you're doing this not only

23  to get this behind you but because you are admitting guilt, you

24  do believe you're guilty of this crime, you think it's the best

25  decision for you to enter this plea.

```
 1              THE DEFENDANT:  I mean, putting it behind me is just
 2    one of the things that I'm excited about, you know, definitely,
 3    because the past will be the past, you know?  But definitely
 4    I'm guilty of looking at things from that perspective, you
 5    know?  Especially walking in today, you know, I have a -- I've
 6    been having a lot of sort of those thoughts, you know, just get
 7    ready to move forward in the right direction.
 8              THE COURT:  Okay.
 9              THE DEFENDANT:  Down the middle, yeah.
10              THE COURT:  And make some amends for the crime that
11    you've committed; is that right?  In the sense of, you know,
12    facing whatever punishment it is that may be imposed and
13    anything of that sort.
14              THE DEFENDANT:  Oh, yes.  I'm ready for the
15    punishment, of course.
16              THE COURT:  Okay.
17              THE DEFENDANT:  Yes.
18              THE COURT:  All right.  Sir, what is your full legal
19    name?
20              THE DEFENDANT:  Michelet Louis.
21              THE COURT:  I'm sorry.  I haven't been pronouncing
22    your name correctly, Mr. Louis.
23              How old are you?
24              THE DEFENDANT:  33.
25              THE COURT:  How far did you go in school?
```

1            THE DEFENDANT:  College graduate.

2            THE COURT:  Okay.  And do you read and speak English,

3  obviously?

4            THE DEFENDANT:  Yes.  I also speak French as well.

5            THE COURT:  Okay.  Is English your native language,

6  or is French your native language?

7            THE DEFENDANT:  Je suis parle Francais.  It's French,

8  the language of my second language.

9            THE COURT:  Okay.  And how long have you been

10  speaking English?

11            THE DEFENDANT:  Not long now.  Before, French, you

12  know, but I do my best with English.

13            THE COURT:  Okay.  Are your -- is your college degree

14  from an institution that -- where you utilized English?

15            THE DEFENDANT:  Yes, it is.

16            THE COURT:  Okay.  Have you had any employment as an

17  adult?

18            THE DEFENDANT:  Yes.

19            THE COURT:  What is the most recent job that you had?

20            THE DEFENDANT:  I was a caretaker.

21            THE COURT:  Okay.  And have you taken any drugs or

22  had any alcohol in the last 24 hours?

23            THE DEFENDANT:  No, just -- just really excited.

24            THE COURT:  Have you ever been treated for any kind

25  of mental illness or addiction to alcohol or drugs?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And which one?  Alcohol, drugs, or mental

3     illness?

4          THE DEFENDANT:  My mental health is just -- I've been

5     trying to get it the right -- it hasn't been right the last ten

6     months or so because the mental imagery hasn't been right, you

7     know, just -- all -- everything that's going on, I wasn't able

8     to put everything into the right proper perspective.  But ever

9     since I was here last time and walking through those doors, I

10    saw exactly what I needed to see, you know, everything.  It's

11    like God was speaking to me.

12         THE COURT:  Okay.  Do you feel confident that you are

13    of clear mind today?

14         THE DEFENDANT:  Oh, I couldn't be more clearer.

15         THE COURT:  Okay.  And do you -- are you confident

16    that you are able to understand everything that's happening in

17    this case and in this hearing today?

18         THE DEFENDANT:  Of course.  I see everything that --

19    that's occurring, everything that's walk -- everybody that's

20    walking in and out.  So I'm very aware.

21         THE COURT:  Okay.  Have you had enough time to talk

22    about your case with your lawyer?

23         THE DEFENDANT:  Yeah, more than enough time.  You

24    know, just --

25         THE COURT:  And are you satisfied with Mr. Kimura's

1    representation of you?

2            THE DEFENDANT:  Sometimes.  But most of the time.

3    But he's a good guy.

4            THE COURT:  Okay.  He's -- he's well-known in this

5    district as a more than competent attorney, so --

6            THE DEFENDANT:  Oh, no, no.  His competence level is

7    high.  He's a very good guy.  He's like a father figure to me.

8            THE COURT:  Okay.

9            THE DEFENDANT:  Yeah.  I would vouch for -- I would

10   vouch for this guy, put my life on it, you know?

11           THE COURT:  All right.  Other than what is in the

12   plea agreement, has anyone made any promises or assurances to

13   you in an effort to get you to plead guilty in this case?

14           THE DEFENDANT:  Assurances?

15           THE COURT:  So other than what's in the plea, has

16   anybody promised you anything?  To get you to plead guilty?

17   So, for example, has anybody promised you what sentence you'll

18   get or anything of that sort?

19           THE DEFENDANT:  As far as the punishment goes?

20           THE COURT:  Right.

21           THE DEFENDANT:  Not yet.  I hope it's just -- it just

22   satisfies the agreement, you know?

23           THE COURT:  Right.  But the plea agreement is the

24   complete listing of all the promises made to you by the

25   government, correct?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Okay.  And has anybody made any other

3   side promises to get you to plead guilty, things that are not

4   in the plea agreement?

5          THE DEFENDANT:  I hope not, you know?

6          THE COURT:  Okay.  All right.

7          Has anyone threatened you or anyone else to get you

8   to plead guilty today?

9          THE DEFENDANT:  Not necessary.  No, no.  No.

10          THE COURT:  Are you pleading guilty of your own free

11   will and because you are guilty?

12          THE DEFENDANT:  Yes.  Yes, I am guilty.

13          THE COURT:  Mr. Kimura, do you have any reason to

14   doubt Mr. Louis' competence to enter a plea today or that the

15   plea is anything other than voluntary on his part?

16          MR. KIMURA:  No, Your Honor.  It is voluntary.

17          THE COURT:  All right.  I will ask Ms. Perlmutter if

18   she's satisfied as well that Mr. Louis is competent to enter a

19   plea today and whether or not she would like me to follow up

20   with any additional questions other than those I already asked.

21          MS. PERLMUTTER:  No.  I believe your colloquy and

22   Mr. Louis' answers are sufficient, Your Honor.

23          THE COURT:  Okay.

24          Mr. Louis, have you received a copy of the indictment

25   in this case?

1          THE DEFENDANT:  Copy.  The telephone -- oh, yes.

2    Yes.  Yes.

3          THE COURT:  Have you discussed it with Mr. Kimura?

4          THE DEFENDANT:  Yes, I have.

5          THE COURT:  Have you read the charges against you

6    that are in the indictment?

7          THE DEFENDANT:  As far as like making the telephone

8    call and communicating, yeah.  Yeah, it's crossed my mind,

9    yeah.  We talked about it.

10         THE COURT:  Do you understand that the indictment

11   charges you with two counts?  The first count is a criminal

12   offense committed by a person accompanying the Armed Forces

13   outside the United States, communicating a threat in violation

14   of 18 U.S.C. Sections 875(c) and 3261; and the second count is

15   criminal offense by a person accompanying the Armed Forces

16   outside the United States, making threat by telephone in

17   violation of 18 U.S.C. Sections 844(e) and 3261.

18         Do you understand that those are the charges in the

19   indictment?

20         THE DEFENDANT:  Where it says --

21         THE COURT:  Under Count 1 and Count 2.

22         THE DEFENDANT:  It says a few pipe -- I'm going to

23   give a few pipe -- yes, yes, yes.

24         THE COURT:  And do you understand that you are

25   pleading guilty today only to Count 1?

1          THE DEFENDANT:  Well, not two.  Not the few pipe,

2     where it says like that.  Not Count 2.  Count 1.  Oh, yes,

3     Count 1.  Yes.

4          THE COURT:  Okay.  And do you understand the nature

5     and the elements of the charge in Count 1?

6          THE DEFENDANT:  Yes.

7          THE COURT:  In a moment I will have Ms. Perlmutter

8     explain to you and to me the elements a little bit more.

9          THE DEFENDANT:  Okay.

10          THE COURT:  And have you entered into a plea

11     agreement with the government?

12          THE DEFENDANT:  Have I entered a plea agreement with

13     the government?

14          THE COURT:  Yes.

15          THE DEFENDANT:  Like with you being there?

16          THE COURT:  No.  Is there a document in front of you

17     that says Memorandum of Plea Agreement?

18          THE DEFENDANT:  Oh, yes.  Yes.

19          THE COURT:  Did you sign that?

20          THE DEFENDANT:  Yes, yes, with you.  Yes.

21          THE COURT:  Have you read the memorandum of plea

22     agreement, or have you had it read to you?

23          THE DEFENDANT:  I haven't heard anything.  I haven't

24     read it.  I haven't read it yet.  I mean I haven't had it read

25     to me.  But I agree.

1          THE COURT:  Okay.  Have you read it?

2          THE DEFENDANT:  Yes, I read it.

3          THE COURT:  Okay.  So it's not that Mr. Kimura read

4   it to you, but you read it yourself?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Okay.  Do you understand what it means?

7          THE DEFENDANT:  Yes.  I'll be walking out those doors

8   eventually, hopefully.

9          THE COURT:  Okay.  Well, does -- was there anything

10   in the plea agreement that you didn't understand?

11          THE DEFENDANT:  No.  There are just some things I

12   wanted added, but that's for another time.

13          THE COURT:  Okay.

14          THE DEFENDANT:  Yeah.

15          THE COURT:  And have you had the opportunity to

16   discuss that and the plea agreement with Mr. Kimura?

17          THE DEFENDANT:  I did.

18          THE COURT:  Okay.

19          THE DEFENDANT:  I did.

20          THE COURT:  And you already said you signed it,

21   right?

22          THE DEFENDANT:  I did.  If we could always add, I

23   don't know if we can or not.

24          THE COURT:  Okay.  Well, that's something for

25   Mr. Kimura and Ms. Perlmutter.  So did you have an opportunity

```
1    to raise that with Mr. Kimura, that you wanted some things
2    added?
3              THE DEFENDANT:  No, I was just waiting for you to be
4    here.  So I don't know.
5              THE COURT:  Okay.
6              THE DEFENDANT:  Yeah.
7              THE COURT:  It sounds to me like it might help you
8    and Mr. Kimura to have some time to talk about the things you
9    want added.  Is that a fair assessment?
10             THE DEFENDANT:  No.  It's okay.  It's okay.  I just
11   want to --
12             THE COURT:  Okay.
13             THE DEFENDANT:  No.
14             THE COURT:  Why don't I give about you just a couple
15   minutes to talk to Mr. Kimura about what you wanted added.  I
16   will stay on the bench.  I won't listen to what you're saying.
17   I just want to be able to confirm that you've had an
18   opportunity to talk to Mr. Kimura about anything you would want
19   added to the plea agreement.  Okay?
20             So we're going to do that.  I'm going to step --
21   actually, I will step out of the courtroom, but I'll be waiting
22   right outside the door.
23             THE DEFENDANT:  Okay.  That'll be perfect.
24             COURTROOM MANAGER:  All rise.
25             (Break was taken.)
```

```
 1                    THE COURT:  Thank you, everyone.  You may be seated.
 2                    Mr. Louis, did you have an opportunity to speak with
 3   Mr. Kimura about what you would like to have added to the plea
 4   agreement?
 5                    Please stay seated.  Thank you.
 6                    DEFENDANT:  I did, Your Hon -- I did, Ms. Otake.  But
 7   I'm just telling him my wife recently passed away and --
 8                    THE COURT:  Oh, I'm sorry.
 9                    DEFENDANT:  Yeah.  And --
10                    Yeah, but everything is good.  It's just I'm going to
11   build -- build a few pipe.  Build a few pipe.  Yeah, everything
12   looks good.
13                    THE COURT:  What do you keep saying about pipe?  What
14   did you just say?
15                    DEFENDANT:  I'm going to build -- I'm just reading it
16   to make sure that it's -- it's right.  It says:  I'm going to
17   build a few pipe bombs and I'm going to --
18                    THE COURT:  Oh, pipe bombs, yes.
19                    THE DEFENDANT:  Yeah.
20                    THE COURT:  Okay.  Right, because that's what the
21   allegation is.
22                    So are you satisfied that the plea agreement contains
23   information that you understand and you had an opportunity to
24   talk to Mr. Kimura about things that you wanted added, and they
25   won't be added, you're satisfied with that, right?
```

1      DEFENDANT:  Yeah, it's kind of -- yeah.  The best

2   resolution is to get me going through those doors, so I'm

3   satisfied.

4      THE COURT:  Okay.

5      DEFENDANT:  As long as I get that.

6      THE COURT:  I'm sorry?

7      DEFENDANT:  As long as I eventually walk out of the

8   doors, you know?

9      THE COURT:  Okay.

10      DEFENDANT:  Be set free one day.

11      THE COURT:  Okay.  Do you understand that I'm not

12   required to accept the plea agreement and I may reject it?  Do

13   you understand that?

14      DEFENDANT:  I would hope not, but I understand.

15      THE COURT:  Okay.  Do you understand that any

16   stipulations in the plea agreement that are between you and the

17   government are not binding on me, that I'm not required to

18   follow any of the stipulations?  Do you understand that?

19      DEFENDANT:  It's good to know.

20      THE COURT:  Okay.  And I'll ask Ms. Perlmutter to

21   describe the general terms of the plea agreement.

22      MS. PERLMUTTER:  Thank you, Your Honor.

23      As part of the plea agreement that's been entered

24   into between the parties, I'll highlight some of the general

25   terms so that Mr. Louis can also follow along.

1           First, I point the Court out to paragraph 4, which

2      sets forth the principal agreement between the parties.

3      Mr. Louis would be voluntarily pleading to Count 1 of the

4      indictment, which is 18 U.S.C. 875(c), and as described in

5      paragraph 4, including 18 U.S.C. 3261(a)(1) as the

6      jurisdictional element.  And then in return, the government

7      agrees to move to dismiss Count 2 of the indictment as to the

8      defendant after sentencing.  And the government further agrees

9      that the United States Attorney's Office for the District of

10     Hawaii will not bring further charges against the defendant

11     based on the actual information known to the government and in

12     its possession pursuant to its investigation as of the date of

13     this plea agreement, so as of today's date.

14          In addition, the penalties are outlined in the plea

15     agreement, and those penalties are reflected in paragraph 7,

16     for the offense that I just outlined, 18 U.S.C. 875(c) and the

17     subsequent jurisdictional element of 3261.

18          For 875(c), it would be a term of imprisonment of up

19     to five years, a fine of up to $250,000, plus a term of

20     supervised release of up to three years.

21          In addition, the Court must impose a hundred-dollar

22     special assessment for the count of conviction.

23          I will address the facts at a later time, Your Honor.

24     And the other significant part of the plea agreement, I want to

25     point out that although there's not any specific stipulations

1   related to the facts beyond paragraph 8, in paragraph 12 the

2   government has indicated to the defendant and the defendant --

3   that he should understand that the government will seek a full

4   term of supervised release, and in seeking that it would -- it

5   would seek to include a mandated mental health assessment and

6   the mandatory mental health treatment as part of the conditions

7   imposed by the court.  It would seek that through the United

8   States Probation Office and also advocate that at sentence

9   before this court.  There's no specific stipulations as to what

10  the defendant must agree to, and he's free to advocate as he so

11  chooses.

12          I also just want to make it clear, although it's not

13  embodied in here, but for purposes of the record, that the

14  government would submit information to the U.S. Probation

15  Office as it's required to do, based on 18 U.S.C. 3553(a), that

16  would cover the history and characteristics of the defendant.

17  And there's multiple allegations and information in the

18  complaint that the defendant has access to, but all of that

19  information would be part of the panoply of information

20  submitted to probation.  I want to make sure the defendant

21  understands that, just as a procedural matter.

22          THE COURT:  And I will cover that with him.

23          MS. PERLMUTTER:  Thank you.

24          Finally, the major term that the government wants to

25  address, specifically in the plea agreement, is paragraph 13,

1  which involves the defendant's right to appeal in collateral

2  review.  As part of pleading guilty and the concessions that

3  the government agrees to, the defendant is in turn agreeing to

4  waiving of his rights to appeal in collateral view -- review.

5         However, he does have two exceptions in which he

6  would be able to seek appeal, and that's included in that

7  paragraph 13 subsection, and se two areas would be for

8  ineffective assistance of counsel, in that he may seek a 2255

9  motion or collateral review based on that; also he may seek to

10 have his sentence reviewed.  If at sentencing Your Honor

11 imposes a term above a properly calculated guidelines range,

12 the defendant may choose to seek an appeal of that portion of

13 the sentence that's above the properly calculated guidelines

14 range.

15        But those would be the two exceptions that are

16 embodied in the plea agreement.  Besides the waiver of trial

17 rights, which I know Your Honor will go through, those are the

18 major terms of the plea agreement that are included.

19        THE COURT:  All right.  Thank you.

20        Let me start by asking Mr. Kimura if he agrees with

21 the recitation of what the maximum penalties are here.

22        MR. KIMURA:  Yes, Your Honor.  I do agree.

23        THE COURT:  Okay.  And Mr. Louis, do you understand

24 that these are the general terms of the plea agreement as

25 Ms. Perlmutter just described?

1          THE DEFENDANT:  Yes.  I just had one question,

2  just --

3          THE COURT:  Okay.  I'll ask you to ask Mr. Kimura

4  that question.

5          THE DEFENDANT:  Okay.

6          THE COURT:  Go ahead.  You can whisper it to him.

7          THE DEFENDANT:  (Confers off the record.)

8          MR. KIMURA:  Okay.  Thank you, Your Honor.

9          THE COURT:  All right.  Mr. Louis, did you have an

10  opportunity to have your question answered by Mr. Kimura?

11          THE DEFENDANT:  I did.

12          THE COURT:  Okay.  And do you still wish to proceed

13  today with the plea agreement?

14          THE DEFENDANT:  Yes.  I'm ready for the punishment.

15          THE COURT:  Do you understand the maximum penalties

16  that were described a moment ago by Ms. Perlmutter?  That these

17  are the maximum penalties, which were:  A maximum term of five

18  years' imprisonment, a fine of up to $250,000, a period of

19  supervised release of up to three years, and a $100 special

20  assessment?

21          THE DEFENDANT:  But no -- no additional?  Nothing

22  additional?

23          THE COURT:  Those are the maximum penalties.

24          THE DEFENDANT:  Those are the -- okay, so.

25          THE COURT:  Do you --

1            THE DEFENDANT:  I'll just -- yeah.

2            THE COURT:  Do you understand that?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Do you understand that you may lose any

5    federal benefits you currently have or be barred from applying

6    for federal benefits by pleading guilty to a felony today?

7            THE DEFENDANT:  No.  Those are not as important as

8    walking through the door.

9            THE COURT:  Okay.  But do you understand that you

10   could lose federal benefits?

11           THE DEFENDANT:  (Nods.)

12           THE COURT:  Sorry.  You have to say yes or no.

13           THE DEFENDANT:  Yes.  Yes.  Yes.

14           THE COURT:  Do you understand that the offense to

15   which you are pleading guilty is a felony offense?  If your

16   plea is accepted and I find you guilty of the offense, that

17   that could deprive you of some valuable civil rights, such as

18   the right to vote, the right to hold public office, the right

19   to serve on a jury, and the right to possess any kind of

20   firearm.  Do you understand that?

21           THE DEFENDANT:  Is that for the rest of my life?

22           THE COURT:  I -- I cannot comment on whether or not

23   it's for the rest of your life.  I don't know the answer to

24   that question.

25           THE DEFENDANT:  Yes, then, I understand.

1          THE COURT:  Okay.

2          THE DEFENDANT:  Hopefully.

3          THE COURT:  Are you a United States citizen?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Okay.  I will not advise you then of any

6    immigration consequences that could follow since you're a

7    United States citizen.

8          I do need to be sure that you are in fact guilty of

9    the crime to which you are pleading guilty.  And to do that, I

10   need to make sure that you committed the offense.

11         So I will start by asking Ms. Perlmutter to tell us

12   what the elements are of the offense to which you are pleading

13   guilty.

14         MS. PERLMUTTER:  Yes, Your Honor.

15         For a violation of 18 U.S.C. 875(c), which is

16   transmitting a communication containing a threat to injure,

17   there are two elements in the Ninth Circuit.  The first, that

18   the defendant knowingly transmitted in either interstate or

19   foreign commerce a form of communication, and here it would be

20   a telephone call, containing a threat to injure a natural

21   person, or it could be a group of people, natural people;

22   second, such telephone call was transmitted for the purpose of

23   issuing a threat or with the knowledge that the telephone call

24   would be viewed as a threat.  And I do want to make it clear

25   that the government need not prove that the defendant actually

1    intended to carry out the threat, so that's not part of the
2    elements of the offense.

3            There is also a jurisdictional element which has to
4    be pled in this case, and which is part of the plea agreement,
5    and that's pursuant to 18 U.S.C. 3261(a)(1).  And that statute
6    provides that whoever engages in conduct outside the United
7    States that would constitute an offense punishable by
8    imprisonment for more than one year if that conduct had been
9    engaged in inside the territorial jurisdiction of the United
10   States, while that person was employed by or accompanying the
11   Armed Forces outside the United States, shall be punished for
12   that offense.  So that would refer to the 875(c) offense; and
13   875(c), as we went over the penalties, contains a maximum
14   penalty of five years so it would qualify as an offense.  And
15   as we'll go through the facts, Mr. Louis was accompanying the
16   Armed Forces outside the United States.

17            THE COURT:  Thank you.

18            Mr. Harlan (sic), do you agree that those are the
19   element of the offense?

20            MR. KIMURA:  Yes, Your Honor, I do agree.

21            THE COURT:  Mr. Louis, do you understand that those
22   are the elements of the offense to which you are pleading
23   guilty?

24            THE DEFENDANT:  "I'm going to take out as many people
25   as I can," yes.  Yes, yes.

1          THE COURT:  Okay.  Okay.  I want to make sure that

2  you're aware of what the evidence would -- what the evidence is

3  that the government would be prepared to offer at trial.  And

4  so I'll ask Ms. Perlmutter to please explain to us what the

5  evidence is that would be offered at trial.

6          MS. PERLMUTTER:  Yes, Your Honor.

7          I'm going to start with the narrow facts and then

8  just expand a bit on that, and so I'll refer Mr. Louis to page

9  8 of the plea agreement.  But --

10          THE COURT:  Paragraph 8 --

11          MS. PERLMUTTER:  Or paragraph 8, excuse me.

12          But if the government were to proceed to trial and

13  present evidence, the government would prove beyond a

14  reasonable doubt the elements of the crime using these and

15  other facts.  However, this is just a recitation of some of the

16  facts but not the whole set of facts that the government would

17  use to prove the elements of the offense.

18          The government would show that on or about

19  December 28th, 2018, Mr. Louis knowingly transmitted a

20  telephone call from in or around Misawa Air Base, Japan, to the

21  Federal Bureau of Investigation, which was ultimately directed

22  to an FBI call center that was located in West Virginia.  In

23  that telephone call from Mr. Louis to the FBI, Mr. Louis

24  knowingly -- and this is one small change to paragraph 8 that

25  has been signed by all the parties today -- threatened to

1  injure the person of another by stating in substance and in
2  part -- this is paraphrasing quotes from Mr. Louis' phone
3  call -- "I'm going to build a few pipe bombs.  I'm going to
4  find a gun, and I'm going to take out as many gay people as I
5  can."

6          In addition, and that same day, on or about
7  December 28th, Mr. Louis was located in or around Misawa Air
8  Base, Japan while accompanying the Armed Forces outside the
9  United States.

10         Mr. Louis was not a national or ordinarily a resident
11  of Japan.  He's actually a citizen of the United States, a
12  naturalized citizen.  And the conduct that he engaged in, the
13  telephone call that he had made to the FBI, constituted an
14  offense punishable by imprisonment of more than one year if
15  that conduct had been engaged in specifically inside the United
16  States.

17         The government will also prove that Mr. Louis' wife
18  is active duty in the Air Force and that he was stationed --
19  she was stationed there and that he accompanied her as a
20  dependent.  There's also the Air Force's documentation that the
21  government would show to support that and that that would
22  qualify him as a dependent spouse accompanying the Air Force.

23         He also -- the evidence would also show that
24  Mr. Louis made the call from Japan to mainland United States,
25  which was ultimately West Virginia.  He admitted as much to

1    that he was in Japan and made the call from there to the FBI.
2    And also, GPS coordinates, both before and after the call, in
3    analyzing Mr. Louis' phone show that he was in Japan at the
4    time.

5            Further, in addition to the basic facts, the specific
6    phone call on December 28th, 2018 is actually recorded by the
7    FBI, and Mr. Louis had access to that through discovery
8    materials of that recorded phone call.  And in that recorded
9    call, Mr. Louis identifies himself by name and also gives other
10   identifying information to substantiate who he is, including
11   that he's originally from Florida, that he currently had an
12   address in Japan, and that he was living with his spouse in the
13   military.

14           Law enforcement, in response to Mr. Louis' comments
15   about the comments that I just quoted and additional comments
16   about threats to injure gay people, took that threat seriously;
17   and subsequently, Air Force OSI interviewed Mr. Louis in Japan
18   and conducted consent searches of his phone.

19           The conditions surrounding the date on December 28th,
20   the government will prove, shows that there was an intention to
21   make such a threat and that it was made knowing that it would
22   be taken as a threat.  For example, the government was able to
23   find in Mr. Louis' phone texts in and around that date seeking
24   access to a gun from other people, also several Internet
25   searches for flights to places where there would be gay parades

1   or other types of things, searches for places where he can buy

2   guns without background checks, searches for how to build pipe

3   bombs as well as other corroborating information that the

4   government would show to prove the seriousness of the

5   statements.

6                THE COURT:  Okay.  Mr. Louis, let me start by asking

7   you:  Have you had an opportunity to read the factual

8   stipulations in paragraph a, 8a on page 4 and 8b on page 5?

9   Did you have an opportunity to read those paragraphs?

10               THE DEFENDANT:  "I'm going build a few pipe" -- "find

11  a gun" and "take out as many people -- gay people as I can,"

12  yes.

13               THE COURT:  Okay.  And just for the record, on

14  occasion Mr. Louis has been reading phrases from the plea

15  agreement out loud as well as from the indictment out loud.

16  So -- but I want to make sure that what's contained in

17  paragraph 8a and 8b is accurate.  Is that accurate?

18               THE DEFENDANT:  "I'm going to take out as many people

19  as I can," I mean, fact -- I mean, from reading it on the

20  paper, factually -- you know, but --

21               THE COURT:  I'm sorry.  It's not accurate?

22               THE DEFENDANT:  I'm sorry.  I'm just a little

23  speechless right now.  Just give me a minute.

24               It's not an accurate representation of me.  But I

25  guess if it's written there, you know, it's what it is.

1          THE COURT:  Okay.  I need to make sure that what --

2    that what is described here is what you did.  So while you may

3    think it's not an accurate representation of you, I need to

4    make sure that what is described here is factually what you

5    did.  Is what is contained in paragraphs 8a and 8b factually

6    what you did to commit this crime?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Okay.  And do you disagree with any of

9    it, with the accuracy of any of it, in paragraphs 8a and 8b?

10          THE DEFENDANT:  From this memorandum, no.

11          THE COURT:  Okay.  Did you have an opportunity to

12   hear Ms. Perlmutter explain what the evidence would be at

13   trial?  Do you understand that that's what the government would

14   offer as evidence at trial in this case?

15          THE DEFENDANT:  I was a little distracted, but I paid

16   attention.

17          THE COURT:  Okay.  And do you understand that that's

18   her recitation of the facts of what would be offered at trial?

19          THE DEFENDANT:  That would be fair.  Yes.

20          THE COURT:  Okay.  And if you could tell me in your

21   own words what you did that makes you guilty of this crime to

22   which you are pleading guilty.

23          THE DEFENDANT:  I wanted to build a big bomb, pipe --

24   pipe bomb, build a few pipe bomb, really big one.  Take out as

25   many -- "I'm going to find my gun and I'm going to take out as

1    many people as I can."

2            THE COURT:  Okay.  Is that what you said when you

3    called the FBI?

4            THE DEFENDANT:  As written.

5            THE COURT:  Okay.  But is that what you said?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Okay.  And did you call the FBI on or

8    about December 28th, 2018, while you were in or around Misawa

9    Air Base, Japan?

10           THE DEFENDANT:  Yes, to explain my grievances, yes.

11           THE COURT:  Okay.  And at that time were you

12   accompanying your wife while she was on active duty in Japan?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Okay.

15           THE DEFENDANT:  May God bless her soul.

16           THE COURT:  And in making that phone call to the FBI,

17   is it true that you knowingly threatened to injure somebody

18   else?

19           THE DEFENDANT:  Who?

20           THE COURT:  Gay people.

21           MR. KIMURA:  (Indicates.)

22           THE DEFENDANT:  Oh, to -- with my gun?  Yes, yes.

23           THE COURT:  Okay.  So is it accurate then that in

24   that telephone call you state -- you stated:  "I'm going to

25   build a few pipe bombs, I'm going to find a gun, and I'm going

1    to take out as many gay people that I can," and that in saying

2    that you were knowingly threatening gay people?

3                 THE DEFENDANT:  As written, yes.  Yes.

4                 THE COURT:  When you say "as written," I don't --

5                 THE DEFENDANT:  That explains it, yes.  Yes.

6                 THE COURT:  Okay.  And that's accurate?

7                 THE DEFENDANT:  Yes.

8                 THE COURT:  Okay.  And do you dispute that the call

9    was directed to a call center in West Virginia?

10                THE DEFENDANT:  I don't recall.

11                THE COURT:  Okay.  But you wouldn't have any reason

12   to doubt that, right?

13                THE DEFENDANT:  I don't know.  I -- I don't know

14   where the FBI offices are.

15                THE COURT:  Okay.

16                All right.  But the FBI office is not in Japan,

17   right?

18                THE DEFENDANT:  I don't know.

19                THE COURT:  Okay.  Mr. Kimura, is there any challenge

20   to the location of the FBI office that received this call being

21   in West Virginia?

22                MR. KIMURA:  No, Your Honor, there is no challenge.

23                THE COURT:  Okay.  Thank you.

24                I'm going to turn now, Mr. Louis, to sentencing in

25   this case, and I'm going to explain a few things about

1  sentencing to you.  United States law establishes detailed

2  sentencing guidelines which specify sentences for people

3  convicted of federal crimes.  I must consider the guidelines

4  when imposing sentence, but they are advisory only, which means

5  that I don't need to follow them.

6           I must also consider other factors set forth in a

7  statute known as 18 U.S.C. Section 3553(a).  Those factors

8  include, among other things, your personal history and

9  characteristics, the need to deter you and others from

10  committing more crimes, the nature and circumstances of this

11  offense, and the need for the sentence imposed to protect the

12  public.

13          Have you and your attorney talked about how the

14  sentencing guidelines might apply in your case?

15          THE DEFENDANT:  No.

16          THE COURT:  Okay.  That is something that Mr. Kimura

17  needs to cover with you if he hasn't.

18          Mr. Kimura, is it your recollection that you did

19  address that with him, with Mr. Louis?

20          MR. KIMURA:  Yes, Your Honor.

21          THE COURT:  Okay.  I'll give you a chance to talk to

22  him to explain what -- what that was.

23          MR. KIMURA:  (Confers off the record.)

24          So I explained to Mr. Louis, and he might have been a

25  bit confused with the question.  But it was discussed with him

1  what the sentencing guidelines were and are and how it would

2  affect your determination of his sentence in addition to all of

3  the other factors.

4           THE COURT:  Thank you.

5           Mr. Louis, is what Mr. Kimura just said true?  That

6  you -- that you did talk to him before?

7           THE DEFENDANT:  I'm sorry.  Just leaving me a little

8  speechless.  Yes, yes.  I did talk to him.  I just -- I just

9  wanted to clear up some things as far as the punishment-wise --

10          THE COURT:  Okay.

11          THE DEFENDANT:  -- to make sure, like, how long it

12 would be, you know, how much I would have to -- how long, how

13 long, you know.  But we -- we cleared that up.

14          THE COURT:  Okay.  And --

15          THE DEFENDANT:  And what would you -- I guess what

16 you would be willing to give and what would I be willing to

17 take in.  But he said that doesn't matter.  But we discussed

18 it.  We cleared it up.

19          THE COURT:  Okay.  So is it fair to say that you

20 understand that there are sentencing guidelines that are

21 supposed to be advisory to me in this case, that I'm not

22 required to follow them, but they are supposed to tell me

23 generally where the sentence could or should be in this case?

24 Do you understand that?

25          THE DEFENDANT:  Yes.  Anything that gets me through

1    those doors, I'm willing to.  I'm willing to.

2              THE COURT:  Okay.  But I want to make sure that you

3    understand that, that there are sentencing guidelines that I

4    must consider in this case.  Do you understand that?

5              THE DEFENDANT:  Oh, coming from you, yes, yes.

6              THE COURT:  Okay.

7              THE DEFENDANT:  Yes.

8              THE COURT:  And do you understand that in addition to

9    that I need to consider the factors that I mentioned a moment

10   ago in that statute?  Do you understand that?

11             THE DEFENDANT:  Yes.  It's playing in my mind right

12   now, yes.

13             THE COURT:  Okay.  And do you understand that I will

14   not be able to determine exactly what your advisory guidelines

15   range is in your case until after a presentence report has been

16   completed by the United States Probation Office and that your

17   attorney and the government would both have an opportunity to

18   object to anything in that presentence report?  Do you

19   understand that?

20             THE DEFENDANT:  I hope not, yes, but I understand.

21             THE COURT:  Okay.

22             THE DEFENDANT:  Yes.

23             THE COURT:  The plea agreement contains stipulations

24   at paragraph 10 related to the sentencing guidelines.  And the

25   stipulation here really relates to whether or not you have

1   accepted responsibility for your offense.

2          So on the bottom of page 5, it talks about it is

3   expected that you will continue to plead guilty and admit your

4   involvement in this crime.  And if you continue to do so

5   through sentencing, then you will get two points off of your

6   total offense level, or I should say base offense level, and

7   that the United States Attorney agrees that your agreement to

8   enter into a plea of guilty -- and then this is in paragraph b

9   -- constitutes notice of intent to plead guilty in a timely

10  manner, so the government doesn't have to prepare for trial;

11  and that if you continue to do so through sentencing, you'll

12  get even an additional one point off of your base offense

13  level.  Do you understand that?

14          THE DEFENDANT:  That's as much as I could get, yes.

15          THE COURT:  Okay.  Do you also understand that I can

16  reject these stipulations?

17          THE DEFENDANT:  I sincerely hope not.  But, yes, I

18  understand.

19          THE COURT:  Do you also understand that after it has

20  been determined what the guidelines range is in this case I

21  will consider the other factors I addressed a moment ago and

22  that I can impose a sentence that is greater than or less than

23  the guidelines range in this case?  Do you understand that?

24          THE DEFENDANT:  Whatever you feel like is just and

25  fair to get me through the door.  Yes, I understand.

1      THE COURT:  Okay.  Do you understand that if the

2   sentence is more severe than you expected or less severe than

3   you expected, you'll still be bound by your plea agreement and

4   you will have no right to withdraw it.

5      THE DEFENDANT:  I'll be able to handle it.  I can

6   handle it.  Yes.

7      THE COURT:  Okay.  So the only cap here on me is that

8   I cannot sentence you more than -- to more than five years in

9   prison.  Do you understand that?

10      THE DEFENDANT:  Yes, I hope not.  Yes.

11      THE COURT:  Okay.  The plea agreement also contains

12   an appeal waiver, at paragraph 13.  Have you gone over

13   paragraph 13 in the plea agreement with your attorney?

14      MR. KIMURA:  (Confers off the record.)

15      THE DEFENDANT:  As far as the making the concessions

16   and what I'm willing to give and what you're willing to give?

17   Is that what it is?

18      THE COURT:  No.  What paragraph 13 covers is that

19   you're waiving your right to appeal your conviction and

20   sentence in this case and that you're knowingly and

21   voluntarily -- voluntarily waiving the right to appeal except

22   as to what is contained in paragraph b.  And in paragraph b, on

23   page 8, it says:  If the court imposes a sentence greater than

24   specified in the guideline range determined by the court to be

25   applicable to you, you can appeal your sentence but only with

1    regard to the portion of your sentence that is greater than the
2    guidelines range.  Do you understand that?
3                THE DEFENDANT:  Yes.
4                THE COURT:  Okay.  Do you understand that you are
5    retaining your right also to bring a claim of ineffective
6    assistance of counsel?  Do you understand that?
7                THE DEFENDANT:  No, like, you're meaning like
8    ineffective as far as --
9                THE COURT:  If you were to determine later that
10   Mr. Kimura was ineffective for whatever reason, you would
11   retain the right to --
12               THE DEFENDANT:  But not -- not me, not me not doing
13   my job right as far as --
14               THE COURT:  No.  Yeah, just Mr. Kimura.
15               THE DEFENDANT:  Oh, okay.
16               THE COURT:  Do you understand that?
17               THE DEFENDANT:  I understand.
18               THE COURT:  And that the waiver includes the right to
19   assert any and all legally waivable claims, do you understand
20   that?
21               THE DEFENDANT:  I will get it done, yes, I
22   understand.
23               THE COURT:  Okay.  And do you understand that the
24   government is not forfeiting its right to appeal the sentence
25   in this matter?

1           THE DEFENDANT:  Yes.

2           THE COURT:  And your appeal waiver also relates to

3   any collateral attacks on your sentence, which are known as

4   habeas petitions.  Do you understand that?

5           THE DEFENDANT:  Does collateral mean together, like?

6           THE COURT:  No.  It means actually related but

7   separate.  Do you understand that?

8           THE DEFENDANT:  At the same time but at a different

9   time?

10          THE COURT:  So, for example, after you're sentenced

11  and during your term of imprisonment, there is a time frame

12  within which you must appeal.  If you don't appeal in that time

13  frame, there are certain circumstances under which you can

14  still attempt to appeal through what is known as a collateral

15  attack.  Do you understand that?

16          THE DEFENDANT:  Anything to get me through those

17  doors --

18          THE COURT:  Okay.

19          THE DEFENDANT:  -- yes, I understand.

20          THE COURT:  But do you understand that and that this

21  appeal waiver includes that time frame after the time for

22  appeal has expired?  Do you understand that?

23          THE DEFENDANT:  The sooner, the better?  So

24  basically, the sooner, the better, is that what this is saying?

25          THE COURT:  No.  No, it's saying that you're waiving

1    certain appellate and collateral attack rights as contained in

2    the appeal paragraph, appeal waiver paragraph.  Do you

3    understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Okay.  And Mr. Kimura, have you gone over

6    the appeal and collateral review paragraph with Mr. Louis?

7              MR. KIMURA:  Yes, Your Honor, I did several times.

8              THE COURT:  Okay.  Do you believe he understands what

9    the appeal waiver and collateral review waiver means in this

10   plea agreement?

11             MR. KIMURA:  I believe he does understand it, yes.

12             THE COURT:  Okay.  Thank you.

13             Do you understand that any discussions with

14   Mr. Kimura regarding the type of sentence you may receive or

15   any recommendation your attorney or the prosecutor will make at

16   sentencing is not binding on me and that you might, based on

17   your guilty plea, receive up to the maximum sentence permitted

18   by law?  Do you understand that?

19             THE DEFENDANT:  So you might give me more or you

20   might give me something much, much, much better?

21             THE COURT:  I could do that compared to the

22   guidelines, or I could sentence you up to the maximum sentence,

23   despite whatever recommendation your lawyer or the government

24   makes.  Do you understand that?

25             THE DEFENDANT:  Yes.  I do.

1          THE COURT:  Okay.  Has anyone made any promise to

2  you, promise to you in any way about what your sentence will

3  be?

4          THE DEFENDANT:  We had -- we had an agreement, you

5  know?  As far as like when I signed the agreement, the

6  punishment would be satisfactory to both me, myself and you.

7          THE COURT:  Okay.

8          THE DEFENDANT:  And it would get me through the

9  doors.

10          THE COURT:  So I want to make sure you understand

11  this, that the only thing that is contained in this plea

12  agreement that I have to follow, okay, is that I cannot

13  sentence you to a term of imprisonment of greater than five

14  years or a term -- and a term of supervised release greater

15  than three years and a fine of up to $250,000 and a $100

16  special assessment.  Do you understand that under the terms of

17  this plea agreement, and by statute, I cannot sentence you to

18  anything greater than that?  Do you understand that?

19          THE DEFENDANT:  I understand that part, but I have

20  one question.  What's the best that you could give me?

21          THE COURT:  I -- I assume that that is a question

22  that Mr. Kimura should answer and not me.  But you've already

23  been incarcerated since I think February is what Mr. Kimura

24  represented.  So obviously I couldn't give you a sentence of

25  zero time since you've already been incarcerated -- or

1   actually, I could give you a sentence of no jail time, but

2   that's -- that's up to me and not up to Mr. Kimura and not up

3   to Ms. Perlmutter.  Do you understand that?

4            THE DEFENDANT:  That's the best, yes.

5            THE COURT:  Okay.

6            Ms. Perlmutter, do you think that's a fair

7   characterization of an answer to his question?

8            MS. PERLMUTTER:  I think that's fair.  I mean I --

9   the only thing I would add is that, as you pointed out,

10  Mr. Louis has been incarcerated, and under the statute and all

11  the applicable rules he will get credit against whatever

12  sentence you impose for the time he's already been

13  incarcerated.

14           THE COURT:  Okay.  Thank you.

15           All right.  So -- but you understand that no

16  recommendation -- I don't need to follow any recommendation.

17  So if the government recommends a sentence that I should impose

18  or Mr. Kimura recommends a sentence that I should impose, I'm

19  not bound by those recommendations.  Do you understand that?

20           THE DEFENDANT:  I'm ready -- I'm willing to accept

21  whatever you feel is best.

22           THE COURT:  Okay.  But you understand that I don't

23  need to follow the recommendations of the lawyers?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Okay.  Do you understand that there's no

1   limitation on the information that I can consider at the time

2   of sentencing concerning your background, character, and

3   conduct provided the information is sufficiently reliable?  Do

4   you understand that?

5          THE DEFENDANT:  As far as the punishment goes?  If

6   I'm up to the task, is that what you're asking?

7          THE COURT:  No.  Do you understand that I can receive

8   whatever information about you in order to determine

9   sentencing, concerning your background, character, and conduct,

10  provided that the information that I am receiving and

11  considering is sufficiently reliable?  Do you understand that?

12         THE DEFENDANT:  So I should give my best as far as

13  providing the information that is relevant to you to make a

14  more -- to be just and fair.

15         THE COURT:  You can do that.

16         THE DEFENDANT:  Yeah.

17         THE COURT:  And the government can also provide me

18  with information so long as it is sufficiently reliable, and

19  that's all done through the presentence report.  Do you

20  understand that?

21         THE DEFENDANT:  I will do my best, yes.

22         THE COURT:  Okay.  And the government can provide me

23  with information as well.  Do you understand that?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Okay.  Do you understand that if you are

1    sentenced to prison, a term of supervised release may follow

2    and that you can be given additional time in prison if I find

3    that you have violated conditions of supervised release?  Do

4    you understand that?

5              THE DEFENDANT:  You say if I violate any of the --

6    any of your demands or any stipulations you put forward, that

7    additional punishment, that's how you -- or I would have to put

8    in a lot more work to make sure that I meet -- that I meet your

9    needs and the standards set forth, right?  The needs of the

10   agreement then?

11             THE COURT:  So after -- so you're going to be

12   sentenced to a term of incarceration, or you're facing a term

13   of incarceration.

14             After you've completed that sentence, what will be

15   imposed is a term of what's known as supervised release; which

16   means that you will be subject to supervision by the United

17   States Probation Office.  And there are going to be conditions

18   of your supervised release.  If you violate those conditions,

19   you could receive additional time in prison if I find that you

20   violated the conditions.  Do you understand that?

21             THE DEFENDANT:  I understand.

22             THE COURT:  Okay.  Do you understand that there is no

23   such thing as parole in the federal system and that if you're

24   sentenced to prison you will not be released on early parole?

25             THE DEFENDANT:  What is parole?

1       THE COURT:  There's no such thing as parole in the
2    federal system.  So the most you can get is credit for good
3    time within the federal prison system.  Do you understand that?
4       THE DEFENDANT:  Oh, so there's -- there's no like
5    early re -- there's no way to go -- go do it earlier?  Is that
6    what you're saying, like?
7       THE COURT:  There's no parole board that would look
8    at your case and decide that whatever sentence I impose should
9    be shortened.  Do you understand that?
10      THE DEFENDANT:  So I just got to accept all of it,
11   all of that, all the sentence?  There's no -- there's no
12   other -- there will be no other person involved to just get in
13   the way?
14      THE COURT:  Right.
15      THE DEFENDANT:  Yeah.  I mean --
16      THE COURT:  I'm going to go over some important
17   rights that you're pleading (sic) out by pleading guilty today.
18   Do you understand that under the Constitution and laws of the
19   United States you have a right to persist in your plea of not
20   guilty and are entitled to a trial by jury?  Do you understand
21   that?
22      THE DEFENDANT:  Yes.
23      THE COURT:  Do you understand that at trial you would
24   be presumed to be innocent and that the government would have
25   the burden of presenting evidence to prove your guilt beyond a

1  reasonable doubt and that at no time would you have to prove

2  that you were not guilty?  Do you understand that?

3         THE DEFENDANT:  Yes.

4         THE COURT:  Do you understand that to be found guilty

5  at a trial, a jury of 12 people would have to unanimously find

6  you guilty beyond a reasonable doubt?  Do you understand that?

7         THE DEFENDANT:  I'm guilty -- yes.  Yes.

8         THE COURT:  Do you understand that at all stages of

9  the prosecution, including trial, you have the right to

10  assistance of counsel in your defense and that if you cannot

11  afford a lawyer, one will be appointed for you?  Do you

12  understand that?

13         THE DEFENDANT:  So if I'm on -- I love hearing it.

14  So -- if I'm hearing you correctly -- wait.  I'm sorry.

15         THE COURT:  Sure.

16         THE DEFENDANT:  Every time I hear it, it's just kind

17  of -- my mind is kind of like -- I get this bubbly.  I don't

18  get this -- butterflies in my stomach.  I'm sorry.

19         THE COURT:  That's okay.

20         So, Mr. Kimura, are you appointed?

21         MR. KIMURA:  Yes, I am, Your Honor.

22         THE COURT:  Okay.  So if you were to proceed to

23  trial, an attorney such as Mr. Kimura, and assuming that you

24  continue to get along with Mr. Kimura, would -- it would be

25  Mr. Kimura -- would assist you in your defense.  Do you

1  understand that?

2              THE DEFENDANT:  Oh, yes.  Mr. Kimura's a great man.

3              THE COURT:  Okay.

4              THE DEFENDANT:  Yes.

5              THE COURT:  Do you understand that at trial you would

6  have the right to see and hear all the government witnesses and

7  have them questioned by your attorney?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Do you understand that you could object

10 to evidence offered by the government and offer evidence on

11 your own behalf, and you could compel witnesses to testify?

12             THE DEFENDANT:  So, like, you mean like -- meaning

13 that the -- the government has a lot of evidence, like a lot,

14 but --

15             THE COURT:  All this means is that you understand

16 that you could object to the government's evidence on whatever

17 basis your attorney determined was appropriate and that you

18 could also offer evidence on your own behalf -- you could offer

19 evidence on your own behalf, and you could call witnesses to

20 testify.  Do understand that, if you went to trial?

21             THE DEFENDANT:  So if I went to trial, like they have

22 their evidence and I have my evidence?

23             THE COURT:  If you wish, yes.

24             THE DEFENDANT:  Yeah.  I see.

25             THE COURT:  Do you understand --

1              THE DEFENDANT:  Yeah.  Yes, I understand.

2              THE COURT:  Do you understand that you would have a

3    right to testify at trial if you chose to do so, but you would

4    also have a right not to testify, and that no inference or

5    suggestion of guilt could be drawn from the fact that you did

6    not testify?  Do you understand that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Do you understand that by entering a plea

9    of guilty and if I accept your plea, there will be no trial,

10   and you will have waived or given up your right to trial as

11   well as all of the other rights we've just discussed?  Do you

12   understand that?

13             THE DEFENDANT:  So if -- with me being guilty, I -- I

14   just have to let you know, like, I give up all -- I have to

15   give everything, basically, like I'm guilty, is that what

16   you're saying?

17             THE COURT:  You have to give up all the rights that I

18   just read to you.

19             THE DEFENDANT:  Okay.  Yes.

20             THE COURT:  If you wish to plead guilty.  Do you

21   understand that?

22             THE DEFENDANT:  I would do my best, yes.

23             THE COURT:  Okay.  Do you have any question about

24   these rights?

25             THE DEFENDANT:  Like the right to a fair trial?  Or

1    like the right to be represent -- fair representation and to

2    prove my guilt beyond a reasonable doubt, I think, right?

3              THE COURT:  Right.  Do you understand all of these

4    rights?

5              THE DEFENDANT:  As much of it that was explained to

6    me and given to me, I'm willing to accept it as -- as is.  As

7    of right now, I do -- I do understand, especially for

8    everything that I'm looking at.

9              THE COURT:  Do you have any questions about any of

10   these rights?

11             THE DEFENDANT:  No, it looks really good.

12             THE COURT:  Okay.

13             THE DEFENDANT:  Looks really good.

14             THE COURT:  And knowing these rights, do you still

15   wish to plead guilty today?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Turning again to the plea agreement, have

18   you had an opportunity to review paragraph 14, related to the

19   financial disclosure, and paragraph 19, related to the use of

20   plea statements?

21             THE DEFENDANT:  What was your question?  I'm sorry.

22             THE COURT:  Sure.  Did you read paragraph 14 and

23   paragraph 19 of the plea agreement prior to coming to court

24   today?

25             THE DEFENDANT:  I did -- I did briefly skim it.  But

1    from what I see, it looks -- I would like to see more, but --

2    but from what I see, it looks -- it looks ex -- it looks

3    amazing.  Amazing.  It was written really well.  I could

4    understand it a little bit more, but looks good.

5                THE COURT:  Okay.  With regard to paragraph 14, you

6    are agreeing to fully disclose any assets to the United States,

7    in paragraph a.

8                In paragraph b, you're authorizing the United States

9    to obtain your credit report.  And in paragraph c, you agree to

10   notify the U.S. Attorney's Office before making any transfer of

11   interest in property with a value exceeding $1,000.  Do you

12   understand that?

13               THE DEFENDANT:  (Reviews document.)

14               So basically what it's saying is that -- does my

15   credit report matter much?  Like, would that make a difference?

16               THE COURT:  I don't -- no.  I -- but that's included

17   in the plea agreement.  So I want to make sure that you

18   understand that that's one of the things you're agreeing to do

19   in the plea agreement if the government feels a need to do

20   that.

21               THE DEFENDANT:  Would that affect my punishment any?

22               THE COURT:  No.

23               THE DEFENDANT:  Oh.

24               THE COURT:  Your credit report is not something that

25   I will consider in imposing your sentence.

1              THE DEFENDANT:  Okay.  And as far as the interest in
2    the property, to a value in excess of a thousand
3    (indiscernible).  So if -- if I own a property on my own, is
4    that saying they take a thousand dollars from it?  Is that what
5    that is saying?
6              THE COURT:  No.  It's saying that you would notify
7    the U.S. Attorney's Office if you were to transfer any interest
8    in property with a value exceeding $1,000.  Do you understand
9    that?
10             THE DEFENDANT:  So --
11             THE COURT:  So if you had a car title and the car was
12   worth more than a thousand dollars, and you wanted to give the
13   car to somebody, you would let the U.S. Attorney's Office know.
14   Do you understand that?
15             THE DEFENDANT:  So if -- like if you -- if I have a
16   penthouse and I don't have to worry about who I -- like who I
17   invite there; it just --
18             THE COURT:  No.
19             THE DEFENDANT:  Okay, okay.  Just wondering.
20             THE COURT:  Do you understand that?
21             THE DEFENDANT:  Yes.  Yes, I do.
22             THE COURT:  Okay.  Paragraph 19 relates to the use of
23   plea statements.  So now that you've signed the agreement, if
24   you decided not to plead guilty, or if you do enter a plea of
25   guilty today but subsequently move to withdraw this guilty

1    plea, and I allow you to withdraw your guilty plea, you are

2    agreeing in this plea agreement that any admission of guilt

3    that you're making by signing this agreement or that you're

4    making in the course of this hearing, as set forth in this

5    agreement, can be used against you in a subsequent trial.  Do

6    you understand that?

7              THE DEFENDANT:  Yes, I do.

8              THE COURT:  Okay.

9              Now, Mr. Louis, as to the charge of communicating a

10   threat by a person accompanying the Armed Forces outside the

11   United States, under 18 U.S.C. Sections 875(c) and 3261, how do

12   you plead, guilty or not guilty?

13             THE DEFENDANT:  To you -- guilty, Your Honor.

14             THE COURT:  I find, Mr. Louis, that you are competent

15   to understand the pleading and to enter a knowing and informed

16   plea, that you understand the charge to which you are pleading

17   guilty, that you are entering a knowing and voluntary plea, and

18   that this is not because of any force or threat, and you're not

19   entering the plea because of any promise other than what is in

20   the plea agreement.

21             I find that the plea of guilty is supported by an

22   independent basis in fact containing each of the essential

23   elements of the offense.  I find that you know all of your

24   rights associated with a trial and that you understand the

25   sentencing guidelines and other factors that I must consider in

1   imposing sentence and the maximum possible punishment.

2            As you have acknowledged that you are in fact guilty,

3   I accept your guilty plea, and you are now adjudged guilty of

4   the offense.  At this time, I will file the plea agreement, but

5   I will not determine whether or not to accept the plea

6   agreement until after an investigation and a presentence report

7   has been prepared.

8            Do we have a sentencing date?

9            COURTROOM MANAGER:  February 6, 2020, at 10:00

10  o'clock a.m.

11           THE COURT:  So Mr. Louis, that's -- I'm sorry,

12  Mr. Kimura?

13           MR. KIMURA:  Mr. Louis wanted to ask if there is a

14  possibility that we could have an earlier date than

15  February 6th.

16           THE COURT:  I will let the parties talk to the

17  probation office about that.  And the reason why I say that is

18  because they are the ones who have to prepare the presentence

19  report.  They have informed the Court that they are very, very

20  busy.  I am fine with it if they can accommodate that.  So if

21  you could contact them, and if they indicate to you that, yes,

22  they can get it done earlier, then I'm fine with setting the

23  sentencing hearing earlier.

24           MR. KIMURA:  Okay.  We will.  Thank you, Your Honor.

25           THE COURT:  Okay.  All right.

1         Mr. Louis, you are now found guilty of the offense.

2    Your sentencing date is currently February 6th.  It might be

3    earlier than that.

4         I ask that between now and then you just think about

5    whether or not you want to say anything to me at sentencing,

6    either in the form of a letter or in a speech to the Court.

7    It's up to you.  You don't have to do that.

8         You should have with you, or you should be provided

9    soon, some pamphlets from the United States Probation Office

10   about what you can expect next in the process.  All right.

11        I'm sorry?

12        THE DEFENDANT:  Sounds good.  Sounds good.  Yeah.

13        THE COURT:  Okay.  Thank you.

14        Ms. Perlmutter, is there anything that I failed to

15   address in the course of the hearing today?

16        MS. PERLMUTTER:  You didn't fail to address anything.

17   For purposes of closing out the whole record on Rule 11,

18   there's no forfeiture applicable in this case.

19        THE COURT:  Okay.

20        MS. PERLMUTTER:  Thank you.

21        THE COURT:  Mr. Kimura?

22        MR. KIMURA:  Nothing further, Your Honor.

23        THE COURT:  All right.  Thank you, Mr. Louis.  I will

24   see you in February, if not before then.

25        THE DEFENDANT:  I hope to see you as well.

1             THE COURT:  Okay.

2             THE DEFENDANT:  Look great.  Thank you.

3             MS. PERLMUTTER:  Thank you.

4             (The proceedings concluded at 12:48 p.m., October 25,

5     2019.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    COURT REPORTER'S CERTIFICATE

2              I, Ann B. Matsumoto, Official Court Reporter, United

3    States District Court, District of Hawaii, do hereby certify

4    that pursuant to 28 U.S.C. Sec. 753 the foregoing is a

5    complete, true, and correct transcript of the stenographically

6    recorded proceedings held in the above-entitled matter and that

7    the transcript page format is in conformance with the

8    regulations of the Judicial Conference of the United States.

9              DATED at Honolulu, Hawaii, December 18, 2020.

10

11

12
                         /s/ Ann B. Matsumoto
13                       ANN B. MATSUMOTO, RPR

14

15

16

17

18

19

20

21

22

23

24

25